UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DEXTER ANDERSON,                           Case No. 0:18-cv-02891-SRN-KMM

          Plaintiff,

v.                                         REPORT AND
                                           RECOMMENDATION
M. RIOS, Warden,

          Defendant.

This matter is before the Court on Dexter Anderson's Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 1.) In light of the urgency of the allegations set forth in Mr. Anderson's motion, on October 11, 2018, the Court ordered the local United States Attorney's Office ("USAO") to respond. (Order (Oct. 11, 2018), ECF No. 5.) The USAO's response has been filed. (Opp'n Mem., ECF No. 9; Decl. of Bryna Ekroot ("Ekroot Decl."), ECF No. 10; Decl. of Misty Jones ("Jones Decl."), ECF No. 11.) For the reasons that follow, the Court recommends that Mr. Anderson's motion for a TRO and preliminary injunction be denied.

I.    Mr. Anderson's Assertions

Mr. Anderson, is currently confined in the Special Housing Unit ("SHU") at the Federal Prison Camp in Duluth ("FPC-Duluth"), a minimum-security facility. He asserts that the Bureau of Prisons ("BOP") plans to transfer him to another facility. However, he alleges that he has two serious medical conditions that require follow-up appointments and treatment, and that the planned transfer would cause him to miss that essential care. First, in July 2016, Mr. Anderson had surgery to remove a cancerous mass and he is receiving follow-up care with an ear, nose, and throat physician ("ENT") in Duluth. He currently has a mass on his forearm that requires a biopsy and an ultrasound to evaluate.

1

Second, he has a chronic condition that requires regular follow-up appointments with an orthopedist. Mr. Anderson contends that his impending transfer by the BOP will prevent him from obtaining necessary care to treat these conditions, and he seeks to enjoin the BOP from transferring him until he has been seen by the ENT and orthopedist.

Mr. Anderson also alleges that the BOP's planned transfer is retaliatory. He asserts that he exercised a protected First Amendment right in filing several grievances. Mr. Anderson claims that prison officials at FPC-Duluth have disciplined him and decided to transfer him to another facility because of his actions. Because this alleged retaliatory transfer will cause him to lose $500 worth of hobby crafts he possesses, he also seeks the TRO and preliminary injunction to prohibit his transfer.

## II.   The USAO's Response

The has responded to the motion for injunctive relief on behalf of the Defendant, FPC-Duluth Warden M. Rios, in Warden Rios's official capacity.[1] The USAO asserts that: Mr. Anderson has been scheduled for a transfer because he has a lengthy recent history of violating prison rules; his medical conditions are being followed on a regular basis; and the BOP will not transfer him to another facility until the follow-up appointments with his ENT and an orthopedist take place.

### *Disciplinary Issues*

On October 3, 2018, Warden Rios approved Mr. Anderson's transfer to a higher-security facility because he has received several disciplinary sanctions for incidents that occurred since his arrival at FPC-Duluth in November of 2017.

---

[1]   Personal service on M. Rios has not yet been completed and the USAO is not yet representing M. Rios on any individual-capacity claims. (Opp'n Mem. at 7–8 n.2.)

(Jones Decl. ¶ 4, Ex. A.) Mr. Anderon's Unit Team requested the transfer to a higher security institution because of the "volume of security violations," including one incident involving threatening bodily harm to a staff member. (*Id.*) Warden Rios approved the request. (*Id.*)

The record reflects five separate incident reports concerning Mr. Anderson's conduct since he arrived at FPC-Duluth. (Jones Decl. ¶ 5.) First, on June 21, 2018, he received an incident report for being in an unauthorized area. (*Id.*, Ex. C.) Prison officials found that he committed the violation and Mr. Anderson lost 30 days of phone privileges. (*Id.*) Second, on August 26, 2018, Mr. Anderson received an incident report for possessing a hazardous tool. That evening, prison officials searched Mr. Anderson's room and discovered a white USB cell phone charging cord concealed in a hole in the wall behind molding underneath a desk. (*Id.*, Ex. G.) Mr. Anderson denied knowing that the cord was in the room. (*Id.*) Mr. Anderson complained that his room had been searched previously, and nothing was found. (*Id.*) Again, Mr. Anderson was found to have violated prison rules and he was sanctioned with disallowance of 27 days good conduct time and loss of 60 days of visiting and telephone privileges. (Jones Decl. ¶ 5(e) & Ex. B at 2.)

Third, on August 28, 2018, Mr. Anderson received an incident report for possession of an unauthorized number of stamps—he had 210 stamps in his cell when the rules limited him to 40. (Jones Decl., Ex. D.) Prison officials found that he committed the violation and took away 60 days of commissary privileges. (*Id.*) Fourth, in another incident report dated August 28, 2018, Mr. Anderson was alleged to have threatened a corrections officer with bodily harm, refused to obey an order of a staff member, and interfered with the taking of count. (Jones Decl. ¶ 5, Ex. F.) During count, Mr. Anderson was told to remove a towel from his bunk that obscured it from view, and when the officer attempted to remove it, Mr. Anderson grabbed it and attempted to pull it back. (*Id.*) When the officer ordered Mr. Anderson to let go of the towel, Mr. Anderson continued to hold onto it for awhile, eventually acquiesced, but then attempted to grab the towel

3

again. (*Id.*) When the officer moved toward the door and away from Mr. Anderson, Mr. Anderson approached the officer with a clinched fist and stated: "I should punch you in the head." (*Id.*) Mr. Anderson denied making the statement, but prison officials found that he committed these offenses. (Jones Decl. ¶ 5(d).) He was sanctioned with disallowance of 27 days good conduct time and forfeiture of 60 days non-vested good conduct time for the threat. He received disallowance of 14 days good conduct time and 120 days loss of commissary privileges for the refusal to obey an order. And he lost 7 days good conduct time and 120 days of visiting privileges for interfering with the count. (*Id.* ¶ 5(d) & Ex. B at 1.)

Finally, on August 30, 2018, Mr. Anderson received an incident report for a situation in which he asked to be placed back into the general population and that his incident reports be dissolved in exchange for his agreement not to pursue any administrative actions or litigation against prison staff. (*Id.*, Ex. E.) Mr. Anderson was found to have committed the violation of extortion/blackmail for this conduct and disciplined as follows: lost 27 days of good conduct time; 60 days loss of property; and 90 days loss of commissary and email privileges. (Jones Decl. ¶ 5(c) & Ex. B at 2.) The written report has not been completed for this incident. (Jones Decl. ¶ 5(c).)

### *Medical Treatment*

FPC-Duluth medical staff are currently following several medical issues with Mr. Anderson. (Ekroot Decl. ¶ 4.) With respect to the mass on Mr. Anderson's forearm, the USAO's response indicates Mr. Anderson was originally diagnosed in July 2016 with a left parotid acinic cell carcinoma that was surgically removed. (*Id.* ¶ 5.) His condition is currently stable and he is being followed by an ENT in Duluth, where he was last seen on June 7, 2018. (*Id.*) Oncologists at the Federal Medical Center in Butner, North Carolina ("FMC-Butner"), advised FPC-Duluth medical staff that Mr. Anderson should receive follow-up appointments every six months for his condition. (*Id.*) FPC-

Duluth is currently scheduling Mr. Anderson to be evaluated by the ENT before his anticipated transfer date, and he will not be transferred until he is evaluated by the ENT. (*Id.*) Additional follow-up appointments can occur at Mr. Anderson's next institution. (*Id.*)

On September 19, 2018, Mr. Anderson reported to his doctor at FPC-Duluth that he had a mass on his left forearm, and the doctor suspected that it was a cystic mass. (Ekroot Decl. ¶ 6.) Out of caution, the doctor ordered an ultrasound and a possible biopsy. (*Id.*) FPC-Duluth medical staff is currently scheduling the ultrasound before his anticipated transfer date, and he will not be transferred until after the ultrasound takes place. (*Id.*) Depending on the results of the ultrasound, the doctor will determine whether additional follow-up should take place at his next institution or whether Mr. Anderson should remain at FPC-Duluth for additional treatment. (*Id.*)

With respect to Mr. Anderson's orthopedic issues, he has severe arthritis in his left knee, which is treated with pain medication. (Ekroot Decl. ¶ 7.) Mr. Anderson was scheduled for an orthopedic consultation to determine the appropriate course of treatment. His appointment occurred on October 1, 2018, but FPC-Duluth has not yet received the orthopedist's report from the consultation. (*Id.*) The response asserts that because Mr. Anderson's arthritis is chronic, "any follow-up requested can occur at his next institution. Until then, his arthritis can continue to be managed with pain medications." (*Id.*)

### III.   Legal Standard

Rule 65 of the Federal Rules of Civil Procedures governs Mr. Anderson's motion for a temporary restraining order and preliminary injunction. To determine whether he is entitled to a TRO or a preliminary injunction, the court considers: (1) the likelihood of success on the merits of Mr. Anderson's claims; (2) the threat of irreparable harm to Mr. Anderson; (3) the balance between that threat of harm and the injury that granting the injunctive relief would inflict on other interested parties; and (4) whether the issuance of a TRO or preliminary

injunction is in the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The same standard applies to a request for a TRO as a request for a preliminary injunction. *Id.* at 114 n.1. Mr. Anderson has the burden of proving that he is entitled to the injunctive relief he seeks. *See Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921 (D. Minn. 2016) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

"[I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotation marks and citations omitted).

## IV. Discussion

The Court concludes that Mr. Anderson has failed to meet his burden to show that he is entitled to a TRO or a preliminary injunction. He has not demonstrated a likelihood of success on the merits of his claim that a transfer to another facility amounts to deliberate disregard of his serious medical needs. The record also shows that he has failed to meet his burden to establish that there is a threat of irreparable harm on such a claim. These same conclusions also apply to Mr. Anderson's retaliatory-transfer claim.

### *Medical Care*

Mr. Anderson's medical-care allegations raise a violation of his Eighth Amendment rights. As construed by the Court, he claims that his transfer to another facility demonstrates a deliberate indifference by Warden Rios to his serious medical needs. A deliberate-indifference claim requires a showing that "[t]he defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*

*v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). This requires the plaintiff to show that the defendant was "substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.*

In response to the motion for injunctive relief, the USAO has presented evidence that Mr. Anderson's medical conditions are being monitored and treated. FPC-Duluth medical staff has examined the mass on his forearm and exercised caution by ordering that he receive an ultrasound and, possibly, a biopsy. He is scheduled for regular follow-up appointments every six months with an ENT according to the recommendations of oncologists at FMC-Butner. Moreover, his chronic arthritis is being treated with pain medication and he had an orthopedic consultation on October 1st. FPC-Duluth medical staff has indicated that it is awaiting the orthopedist's report from that visit, and will continue to monitor and treat the condition based on the doctor's plan.

The Court concludes that Mr. Anderson has failed to carry his burden to show that he is likely to succeed on the merits of his deliberate-indifference claims. Rather than reflecting that FPC-Duluth is deliberately disregarding his serious medical needs, the record demonstrates that FPC-Duluth is monitoring Mr. Anderson's medical conditions and administering regular care. In his Declaration, Mr. Anderson asserts that the ENT in Duluth decided it would be best to do follow-up appointments with him every 90 days rather than continuing CT scans every six months. (Pl.'s Decl. ¶¶ 4-5.) However, Mr. Anderson asserts that it has been close to 120 days since he was seen by the ENT specialist. (*Id.*) He asserts that a transfer would cause major delays in getting a consultation with another ENT. (*Id.* ¶ 20.) However, even if Mr. Anderson is correct regarding the recommendation for 90-day checkups, it is not clear that FPC-Duluth medical staff are deliberately disregarding his medical needs if they are following the recommendations of oncologists at FMC-Butner for the appropriate timing of his appointments.

The record also demonstrates that Mr. Anderson has failed to meet his burden to show that his transfer presents a threat of irreparable harm. Mr. Anderson's Declaration asserts, in a conclusory fashion, that if he is transferred he will not receive urgent medical care he requires, but the record tells a different story. The evidence submitted with the USAO's response shows that FPC-Duluth will not transfer Mr. Anderson before he has a follow-up appointment with an ENT to conduct an ultrasound for the mass on his forearm. Nor will FPC-Duluth transfer Mr. Anderson until medical staff receives a report from the orthopedist concerning the October 1, 2018 appointment , and FPC-Duluth medical staff will not support Mr. Anderson's transfer to another facility if further care for his chronic arthritis precludes it. These facts show that FPC-Duluth is not rushing to transfer Mr. Anderson before he receives important medical care and that his further treatment will not be improperly delayed due to the planned transfer.

For these reasons, no TRO or preliminary injunction should issue related to Mr. Anderson's claim that the Defendant is deliberately indifferent to his serious medical needs.

### Retaliatory Transfer

Mr. Anderson also argues that the decision to transfer him to a higher security institution constitutes retaliation against him for exercising his constitutional rights. The decision to assign a prisoner to a particular facility is discretionary with the BOP and a transfer is permissible so long as it is not done for a prohibited or invidious reason. *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996). A prisoner cannot be transferred in retaliation for exercising a constitutional right. *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993).

"[T]o sustain a retaliation claim, a prisoner must show that the primary purpose of a defendant's alleged retaliatory actions was to punish the prisoner for attempting to exercise his constitutional rights." *Brooks v. Roy*, 881 F. Supp. 2d 1035, 1057 (D. Minn. 2012) (describing a "but for" standard for a claim of

8

retaliatory transfer); *Johnson v. Esry*, No. 98-2573, 2000 WL 375269, at *1 (8th Cir. 2000) (per curiam). Mere allegations that an official's conduct was retaliatory do not suffice to meet the plaintiff's burden to prove such a claim. *Meuir v. Green Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Instead, he must present affirmative evidence of a retaliatory motive. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

When a disciplinary decision follows the actual violation of a prison rule, retaliatory-conduct claims cannot satisfy the but-for standard. *See Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990)). This means that a defendant can prevail by showing "'some evidence' the inmate actually committed a rule violation." *Id.* (citing *Goff v. Burton*, 7 F.3d 734, 738-39 (8th Cir. 1993)).

Based on the record presently before the Court, Mr. Anderson has not shown that he is likely to succeed on the merits of his retaliatory-transfer claim. Mr. Anderson offers only allegations of retaliatory motivation behind several disciplinary decisions and the ultimate determination that he should be transferred to a higher security prison. (*See* Pl.'s Decl. ¶¶ 6-19.) There is no affirmative evidence here of a retaliatory motive for any of the decisions of prison officials Mr. Anderson describes in his complaint. The USAO's response, on the other hand, presents evidence of Mr. Anderson's disciplinary history between June and late August of 2018. Several incident reports indicate the various disciplinary decisions concerning Mr. Anderson's conduct were supported by at least some evidence. At least at this stage, these incident reports, including the incident involving a threat to punch a correctional officer in the head, led FPC-Duluth officials and Warden Rios to conclude that Mr. Anderson's continued confinement at a minimum-security federal prison camp was no longer appropriate. Based on this evidentiary record, the Court concludes that Mr. Anderson has not demonstrated a likelihood of success on the merits for his retaliatory-transfer claim.

Mr. Anderson has also not shown that there is a threat of irreparable harm connected with the decision to transfer him to another BOP institution. He complains that the transfer will cause him to lose "$500.00 worth of hobby craft items that are specially ordered and are non-transferrable to another institution," (ECF No. 1 at ¶ 4.) However, if Mr. Anderson were to lose these items and showed that the loss was caused by an unconstitutional transfer, there is no indication in the record that an award of monetary damages could not remedy the alleged harm. Accordingly, the Court finds that Mr. Anderson did not meet his burden on this factor.

### Balancing of Harms and Public Interest

Given both that Mr. Adams has not demonstrated any threat of irreparable harm and that any preliminary injunctive relief the Court would recommend would interfere with prison administration, the Court finds that the balance of the harms here weighs against granting a TRO or preliminary injunction. *See Badger v. Loe*, 2018 WL 3910846, at *3 (W.D. Ark. July 31, 2018) (citing *Goff v. Harper*, 60 F.3d at 520, and concluding that balance of harms weighed against granting a preliminary injunction and TRO for an inmate where injunctive relief would interfere with medical judgment of a prison physician and the administration of the plaintiff's facility). For the same reasons, the Court finds that it would not be in the public interest under these circumstances to enjoin the transfer of Mr. Anderson to another facility.

## V.  Additional Considerations

The USAO's response asks the Court to dismiss Mr. Anderson's lawsuit in addition to denying his motion. (Opp'n Mem. at 1.) The Court declines to make such a recommendation at this time. Indeed, as explained in the Court's October 11, 2018 Order, the Court has deferred ruling on Mr. Anderson's pending application to proceed *in forma pauperis* in this suit. (Oct. 11th Order at 2 ¶ 1.) Because Mr. Anderson has applied for IFP treatment and his case is subject to the Prison Litigation Reform Act, the Court will consider whether his

submissions fail to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1). The request for dismissal of this suit at this stage is premature.

The USAO's response also asks the Court to reconsider its liberal construction of Mr. Anderson's filings to include a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), because Mr. Anderson seeks only injunctive relief and a *Bivens* claim can only lie for monetary damages. (Opp'n Mem. at 6–7.) The Court will determine whether Mr. Anderson's claims can properly be interpreted to assert a claim under *Bivens* when it screens Mr. Anderson's pleadings and decides on the appropriate next steps.

## VI. Recommendation

For the reasons outlined above, **IT IS HEREBY RECOMMENDED THAT** Mr. Anderson's Motion for a Temporary Restraining Order be **DENIED**.

Date: October 18, 2018         *s/Katherine Menendez*
                               Katherine Menendez
                               United States Magistrate
                               Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

11

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.